# EXHIBIT A

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF COLLETON | ) | C/A NO.: |
| | ) | |
| Pomega Energy Storage Technologies, Inc. and Kontrolmatik Technologies, Inc., | ) ) ) | |
| Plaintiffs, | ) | **SUMMONS** |
| vs. | ) ) | |
| Jones Lang LaSalle Americas, Inc., | ) ) | |
| Defendant. | ) ) | |

**TO:** **THE DEFENDANT ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED AND REQUIRED** to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the said Complaint on the subscribers at their address at 2530 Devine Street, Third Floor, Columbia, South Carolina 29205, within thirty (30) days after the service thereof; and if you fail to answer the Complaint within the time aforesaid, the Plaintiffs in this action will apply to the Court for judgment by default for the relief demanded in the Complaint.

**SMITH ROBINSON, LLC**

*s/Jonathan M. Robinson*
Jonathan M. Robinson (SC Bar # 68285)
Frederick N. Hanna, Jr. (SC Bar # 104659)
2530 Devine Street, Third Floor
Columbia, SC  29205
803-254-5445

*Attorneys for Plaintiffs*

April 24, 2024

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF COLLETON ) | C/A NO.: |
| ) | |
| Pomega Energy Storage Technologies, ) | |
| Inc. and Kontrolmatik Technologies, Inc., ) | |
| ) | **COMPLAINT** |
| Plaintiffs, ) | |
| vs. ) | (***Jury Trial Demanded***) |
| ) | |
| Jones Lang LaSalle Americas, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

COME NOW Plaintiffs Pomega Energy Storage Technologies, Inc. ("Pomega") and Kontrolmatik Technologies, Inc. ("Kontrolmatik") (collectively, "Plaintiffs") complaining of the Defendant Jones Lang LaSalle Americas, Inc. ("Defendant" or "JLL"), and would allege and respectfully show unto this Honorable Court as follows:

## INTRODUCTION

1.  In this action, Plaintiffs seek a declaration of their rights relating to the payment owed to JLL in connection with business and economic incentives provided to Plaintiffs by the State of South Carolina and Colleton County, South Carolina.

2.  Plaintiffs are energy storage system manufacturers. In 2022, Plaintiffs began exploring the opportunity of opening a lithium-ion battery cell manufacturing facility in the United States.

3.  Shortly thereafter, Plaintiffs retained JLL to assist with site location, real estate acquisition, and procurement of business and economic incentives. In May 2022, Kontrolmatik and JLL executed a non-binding Memorandum of Understanding that provided JLL would be compensated on a contingency fee basis for its procurement of business and economic incentives

on behalf of Kontrolmatik. Kontrolmatik and JLL executed the Memorandum of Understanding prior to selecting a location for the manufacturing facility.

4. The Memorandum of Understanding called for JLL to receive a fee equal to ten percent (10%) of business and economic incentives "identified or negotiated" by JLL on behalf of Kontrolmatik, or $5,000,000, whichever is less.

5. Subsequently, Plaintiffs, acting under the advice of JLL, selected Colleton County, South Carolina as the location for the manufacturing facility. Despite JLL warranting in the Memorandum of Understanding that it would "comply with all applicable federal, state and local laws, rules, regulations, codes, statutes, ordinances, and orders of any governmental or regulatory authority," JLL did not seek to remove the contingency fee structure after South Carolina was selected as the site for the facility.

6. South Carolina law prohibits representatives of taxpayers from charging a contingency fee for the procurement of economic incentives. *See* S.C. Code Ann. § 12-60-90(E). This contingency fee-prohibition is plainly stated in certain economic incentive applications prepared by the State.

7. Due to the scale of the investment and economic impact of Plaintiffs' facility, the State of South Carolina and Colleton County offered Plaintiffs an economic incentives package with a total value of $127,565,742.

8. The vast majority of these incentives were not "identified or negotiated" by JLL.

9. Nevertheless, JLL has demanded that Plaintiffs pay a fee of $5,000,000 for the incentives offered by South Carolina and Colleton County.

10. Pursuant to the Uniform Declaratory Judgments Act, S.C. Code Ann. §§ 15-53-10, *et seq.*, Plaintiffs seek a declaration from this Court that: (i) the Memorandum of Understanding

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

and the Amendment thereto that Plaintiffs and JLL executed are not legally enforceable; (ii) the contingency fee structure for economic incentives provided in the Memorandum of Understanding violates South Carolina law; (iii) Plaintiffs are not obligated to pay a fee on any incentives that JLL did not actively "identify or negotiate"; and (iv) Plaintiffs are only obligated to pay JLL in an amount that fairly reflects JLL's services in actively identifying or negotiating incentives.

11. Pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*, Plaintiffs also seek to recover all damages proximately caused by JLL's deceptive practices and attempts to recover an unlawful contingency fee.

## PARTIES

12. Plaintiffs Pomega Energy Storage Technologies, Inc. and Kontrolmatik Technologies, Inc. are Delaware corporations with principal places of business in Virginia.

13. Defendant Jones Lang LaSalle Americas, Inc. is, upon information and belief, a Maryland corporation with its principal place of business in Illinois. JLL conducts business in South Carolina, including the conduct that gives rise to this action. JLL is registered to do business in South Carolina and maintains a registered agent in South Carolina.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this dispute. A real, actual, substantial, and justiciable controversy, appropriate for judicial determination under the Uniform Declaratory Judgments Act, S.C. Code Ann. §§ 15-53-10, *et seq.*, exists concerning Plaintiffs' obligation to pay JLL a fee related to economic incentives awarded by South Carolina and Colleton County.

15. This Court has personal jurisdiction over the parties to this action.

3

16. South Carolina Courts may exercise personal jurisdiction over a corporation or other entity where the cause of action arises from the entity's contacts in the State, including transacting any business in the State, contracting to supply services or things in the State, entering into a contract to be performed in whole or in part by either party in the State, and more. S.C. Code Ann. § 36-2-803.

17. By engaging in the conduct described in this Complaint, JLL has purposefully availed itself of the privileges of conducting activities in the State of South Carolina such that due process authorizes the exercise of personal jurisdiction over it in this action.

18. Venue is appropriate in Colleton County because the most substantial part of the acts and omissions giving rise to the causes of action pleaded in this Complaint occurred in Colleton County.

19. Further, adjudication of this claim must occur in South Carolina and pursuant to South Carolina law because of the strong public policy against allowing contingency fees to be charged for economic incentives provided by the State and its Counties.

**FACTUAL BACKGROUND**

20. Pomega and Kontrolmatik are electrification contractors and energy storage system manufacturers that specialize in manufacturing lithium-ion battery cells. Their mission is to provide energy storage technology with industry-leading safety, reliability, and efficiency. Pomega is a subsidiary of Kontrolmatik.

21. Plaintiffs have provided energy storage system integration services for several years and have successfully begun operating a lithium-ion battery cell manufacturing facility in Turkey. In 2022, Plaintiffs began exploring the possibility of opening a United States-based battery cell manufacturing facility.

4

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

22. Because Plaintiffs were unacquainted with United States markets, as well as the laws and regulations applicable to their planned development, Plaintiffs sought the consulting services of JLL.

### *The May 2022 Memorandum of Understanding*

23. In early May 2022, JLL drafted and presented Kontrolmatik with a Memorandum of Understanding ("MOU") which purported to "outline the terms of an agreement" under which JLL would provide services to Kontrolmatik.

24. The parties executed the MOU on or around May 10, 2022.

25. The parties did not intend for the MOU to be binding. The parties did not agree to all essential and material terms in the MOU.

26. Kontrolmatik took no part in preparing or negotiating the terms of the MOU. Kontrolmatik did not retain separate counsel to assist with or review the MOU.

27. Exhibit A to the MOU set forth JLL's "scope of services," which included location selection, real estate acquisition, and business and economic incentive negotiation services.

28. In the MOU, JLL warranted and represented to Kontrolmatik that "it shall comply with all applicable federal, state and local laws, rules, regulations, codes, statutes, ordinances, and orders of any governmental or regulatory authority[.]"

29. The MOU provided that Kontrolmatik "does not need consent for an assignment to [Kontrolmatik's] affiliates, subsidiary, or an entity under [Kontrolmatik's] economic control."

30. The MOU further stated that "JLL agrees to perform the Services and be compensated for its efforts as outlined in Exhibit A."

31. Sections 1 and 2 of Exhibit A to the MOU dealt with location selection and real estate acquisition services.

32. Section 3 of Exhibit A to the MOU dealt with business and economic incentive negotiation services. Section 3 set forth two phases: an incentive design and negotiation phase and an incentive implementation phase.

33. In the "Compensation" portion of Section 3, the MOU stated that JLL was to be compensated for "10% (ten percent) of Benefits (the 'BEI Fee') or $5,000,000 capped fee; whichever is less."

34. The MOU explained, "[f]or purposes of the BEI Fee, the term 'Benefits' is defined as the monetary value to be received by [Kontrolmatik] that is *identified or negotiated* by JLL on behalf of [Kontrolmatik] (both statutory and legislative) and that [Kontrolmatik] agrees can be utilized for the Project." (emphasis added).

35. The final sentences of the "Compensation" portion of Section 3 state: "BEI Fee is due to JLL upon approval of benefits package and relevant state and/or local governmental entities. Payment of the BEI fee is due to JLL within thirty (30) days of receipt."

*Project Quartz*

36. In the months following execution of the MOU, Kontrolmatik and JLL began discussing various potential sites for the planned lithium-ion battery manufacturing facility.

37. Ultimately, Kontrolmatik, acting under JLL's advice, chose to locate the facility in Colleton County, South Carolina near the City of Walterboro. Kontrolmatik dubbed the planned development "Project Quartz."

38. Project Quartz presented a massive economic benefit to Colleton County and the State of South Carolina.

39. Project Quartz involved a $279 million dollar investment and the creation of over 600 new jobs over a five-year period.

6

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

40. Due to the sheer size of this investment in South Carolina's economy, Project Quartz automatically qualified for a robust economic incentives package.

### *Economic Incentives Awarded by Colleton County and the State*

41. In December 2022, the South Carolina Department of Commerce awarded Plaintiffs a combined incentive package provided by the State and Colleton County ("Incentive Package"). The total value of all incentives totaled $127,565,742.

42. Some of the incentives included in the Incentive Package were identified and negotiated by JLL. For example, JLL negotiated the terms of a cash grant from the State of South Carolina and a special source revenue credit from Colleton County.

43. Most of the incentives included in the Incentive Package, however, were not identified or negotiated by JLL. For example, Plaintiffs were awarded corporate income tax credits and sales tax exemptions based solely upon statutory formulas—not JLL's efforts.

44. Although Plaintiffs have not yet received the incentives awarded in the Incentives Package, JLL contends it is now entitled to a $5,000,000 fee, the highest contingency fee amount under the MOU, for its work in procuring the Incentives Package.

45. A ten percent fee on the amount of incentives that JLL actually identified or negotiated would be far less than $5,000,000.

46. Additionally, as noted above, JLL claims it is entitled to a $5,000,000 fee despite South Carolina law prohibiting contingency fee arrangements for administrative tax practices. JLL never attempted to change its contingency fee structure after South Carolina was selected as the location for Plaintiff's manufacturing facility.

47. JLL assisted in submitting applications for certain incentives wherein application materials explicitly stated contingency fees were not permitted.

7

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

### *The Amended Memorandum of Understanding and JLL's Demands for Payment*

48. In the months following the Incentives Package award, the parties discussed (i) whether JLL was entitled to a fee on incentives Plaintiffs automatically qualified for that JLL did not "identify or negotiate" and (ii) the timing for payment of JLL's fee relating to economic incentives.

49. Kontrolmatik consistently explained its understanding that JLL was not entitled to receive a fee for any incentives it did not actively procure.

50. In February 2023, JLL drafted and presented Plaintiffs with a document titled "First Amendment to Memorandum of Understanding" (hereinafter, "Amended MOU"). Like the MOU, the parties did not intend the Amended MOU to be enforceable.

51. In the Amended MOU, Kontrolmatik assigned its rights and obligations under the MOU to Pomega.

52. The Amended MOU also extended the real estate acquisition services term set forth in the MOU.

53. Additionally, the Amended MOU made a limited adjustment to the Compensation portion of Section 3 to Exhibit A of the MOU. Specifically, the Amended MOU deleted "[t]he last sentence" of that section.

54. In the MOU, the last sentence of the Compensation portion of Section 3 stated only: "Payment of the BEI fee is due to JLL within thirty (30) days of receipt."

55. In place of that sentence, the Amended MOU provided: "BEI Fee is due to JLL upon approval of benefits package and relevant state and/or local governmental entities. [Plaintiffs] acknowledges that JLL has completed the Services subject matter of this Agreement and that

8

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

Payment of the BEI Fee is now due and payable to JLL and 100% free of any contingencies, in accordance with the following schedule:

- $750,000 due 30 days from December 8, 2022 State of South Carolina public announcement of the transaction (the "Announcement Date") (January 7, 2023)

- $1,000,000 due six (6) months from December 8, 2022 Announcement Date (June 7, 2023)

- $3,250,000 (the balance) shall be due the sooner of 18 months from the December 8, 2022 Announcement Date (June 7, 2024) or when Client secures and closes on financing for the project."

56. The Amended MOU did not change any of the other provisions of Section 3 of Exhibit A to the MOU. Accordingly, the Amended MOU did not change the definition of the term "Benefits," which the MOU defined as "the monetary value to be received by [Plaintiffs] that is identified or negotiated by JLL on behalf of [Plaintiffs] (both statutory and legislative) and that [Plaintiffs] agrees can be utilized for the Project."

57. No sufficient consideration was exchanged in connection with the Amended MOU. Moreover, in light of JLL's limited efforts in identifying or negotiating incentives, JLL's claimed fee of $5,000,000 is plainly excessive and unconscionable.

58. Consistent with Plaintiffs' understanding that JLL is only entitled to payment for incentives it actively identified or negotiated on behalf of Plaintiffs, Plaintiffs have paid JLL $750,000 for its work in procuring economic incentives.

59. JLL has demanded that Plaintiffs pay additional funds and has threatened litigation. Accordingly, a live and justiciable controversy exists between Plaintiffs and JLL over the fees owed to JLL for its work in procuring economic incentives.

9

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

60. The dispute surrounding JLL's demand for unearned and illegal fees has proximately caused Plaintiffs damages. Such damages include, but are not limited to, delays in construction of the planned facility and other lost business opportunities.

### PLAINTIFFS' FIRST CAUSE OF ACTION UNDER THE S.C. DECLARATORY JUDGMENT STATUTE

(*MOU and Amended MOU are not legally enforceable*)

61. Plaintiffs hereby incorporate by reference and re-allege each of the preceding paragraphs of this Complaint.

62. "A valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 568, 578, 762 S.E.2d 696, 701 (2014).

63. Here, the parties did not intend for either the MOU or the Amended MOU to be binding and enforceable. Rather, the parties intended only for these documents to "outline the terms" under which JLL would provide services to Plaintiffs.

64. There was never a meeting of the minds of the parties as to Plaintiffs' purported obligation to pay JLL a commission on incentives that JLL did not identify or negotiate.

65. Indeed, because the MOU was executed prior to Plaintiffs selecting a location for their planned manufacturing facility, the parties did not agree to all essential and material terms surrounding JLL's services and compensation. The incentives process differs greatly from state to state and county to county.

66. Even assuming the parties intended for the MOU or Amended MOU to be enforceable and binding, which they did not, the MOU and Amended MOU were not supported by sufficient consideration. Moreover, in light of JLL's limited efforts in identifying and negotiating incentives, JLL's claimed fee is plainly excessive and unconscionable.

67. A real, actual, substantial, and justiciable controversy, appropriate for judicial determination under the Uniform Declaratory Judgements Act, S.C. Code Ann. §§ 15-53-10, *et seq.*, exists concerning the enforceability of the MOU and the Amended MOU.

68. Plaintiffs are entitled to, and the Court should enter, a declaratory judgment that the MOU and the Amended MOU are not legally binding.

### **PLAINTIFFS' SECOND CAUSE OF ACTION UNDER THE S.C. DECLARATORY JUDGMENT STATUTE**

**(*JLL not entitled to fee on incentives it did not identify or negotiate*)**

69. Plaintiffs hereby incorporate by reference and re-allege each of the preceding paragraphs of this Complaint.

70. Even assuming the MOU and Amended MOU were legally binding, neither document would require Plaintiffs to pay JLL a contingency fee on incentives JLL did not identify or negotiate.

71. Rather, the MOU plainly stated that JLL could only receive a contingency fee on incentives "***identified or negotiated*** by JLL on behalf of [Kontrolmatik] (both statutory and legislative) and that [Kontrolmatik] agrees can be utilized for the Project." (emphasis added).

72. The Amended MOU did not alter this provision of the MOU. Rather, the Amended MOU only deleted the last sentence of Section 3 to Exhibit A of the MOU.

73. Accordingly, Plaintiffs are not obligated to pay JLL a fee on most of the incentives awarded in the Incentives Package.

74. Although Plaintiffs are willing to pay JLL a fair amount to compensate it for the incentives it did identify or negotiate, that amount may not include impermissible fees and is far less than $5,000,000.

11

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

75. A real, actual, substantial, and justiciable controversy, appropriate for judicial determination under the Uniform Declaratory Judgements Act, S.C. Code Ann. §§ 15-53-10, *et seq.*, exists concerning the amount owed to JLL for its work in procuring economic incentives.

76. Plaintiffs are entitled to, and the Court should enter, a declaratory judgment that JLL is not obligated to receive contingency fees prohibited by law or on any incentives it did not actively negotiate.

## **PLAINTIFFS' THIRD CAUSE OF ACTION UNDER THE S.C. DECLARATORY JUDGMENT STATUTE**

(***Contingency fees for economic incentives are prohibited in South Carolina***)

77. Plaintiffs hereby incorporate by reference and re-allege each of the preceding paragraphs of this Complaint.

78. Under South Carolina law, applying for and negotiating economic incentives with State agencies and local governments is part of the administrative tax process. *See* S.C. Code Ann. § 12-60-90(A).

79. When engaging in the administrative tax process, representatives of taxpayers must comply with the duties and restrictions set forth in 10.27 of the United States Treasury Department Circular No. 230.

80. Circular No. 230 enumerates specific situations in which a practitioner may charge a contingency fee. In all other situations, contingency fees are prohibited.

81. None of Circular No. 230's exceptions apply to this case to permit JLL's contingency fee payment structure.

82. South Carolina's prohibition against the use of contingency fees in the administrative tax process is a strong public policy of the State.

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

83. Other State agencies, such as the Department of Commerce, confirm this public policy in economic incentive application materials.

84. For example, the application for a job development credit published by the South Carolina Coordinating Council for Economic Development plainly states that a contingency fee tied to the award of job development credits is not permitted.

85. JLL continues to assert it is entitled to a contingency fee on the incentives awarded in the Incentives Package, despite the fact that it assisted in the completion of the job development credit application and knows such fees are unlawful.

86. Even assuming the parties intended the MOU and Amended MOU to be binding and enforceable, these documents contravene South Carolina's public policy against the award of a contingency fee in connection with the administrative tax process and are therefore illegal and void ab initio.

87. A real, actual, substantial, and justiciable controversy, appropriate for judicial determination under the Uniform Declaratory Judgements Act, S.C. Code Ann. §§ 15-53-10, *et seq.*, exists regarding the legality of JLL's contingency fee structure for the procurement of economic incentives.

88. Plaintiffs are entitled to, and the Court should enter, a declaratory judgment that JLL is not obligated to receive a contingency fee on any economic incentives awarded to Plaintiffs because such fee structure is invalid and unenforceable in South Carolina.

### **PLAINTIFFS' FOURTH CAUSE OF ACTION**

(***Unfair Trade Practices Act***)

89. Plaintiffs hereby incorporate by reference and re-allege each of the preceding paragraphs of this Complaint.

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

90. Section 39-5-20(a) of the South Carolina Unfair Trade Practices Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

91. Section 39-5-140(a) of the South Carolina Unfair Trade Practices Act authorizes recovery whenever a plaintiff has suffered "any ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice."

92. The South Carolina Unfair Trade Practices Act sets forth the elements of a cause of action, which include: (1) the opposing party engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the opposing party's use of the unlawful trade practice, and (3) the unlawful trade practice had an adverse impact on the public interest.

93. JLL has engaged in unlawful trade practice acts.

94. Specifically, JLL acted in an unfair and deceitful manner by (i) charging a contingency fee on an award of economic incentives in violation of South Carolina law; (ii) charging a contingency fee on an award of economic incentives that Plaintiffs automatically qualified for and that JLL did not identify or negotiate; (iii) failing to provide promised services and expertise in obtaining economic incentives for which JLL was involved in negotiating; (iv) seeking to enforce the payment of contingency fees on an award of economic incentives that JLL knew was was unlawful; and (v) seeking to enforce the payment of contingency fees on an award of economic incentives that is excessive and unconscionable.

95. Plaintiffs have suffered actual, ascertainable damages as a direct and proximate result of the actions of JLL. Such damages include, but are not limited to, delays in the construction of Plaintiffs' planned manufacturing facility while JLL continues to demand payment

14

of an unlawful contingency fee, loss of economic incentives, loss of business opportunities, legal fees, and costs.

96. JLL's unlawful trade practices have had an adverse impact on the public interest and the interests of Plaintiffs.

97. JLL's unlawful trade practices have the potential for repetition. Upon information and belief, JLL routinely enters into contingency fee arrangements for similar services without regard to state and local laws prohibiting such arrangements. Moreover, JLL routinely charges a contingency fee on incentives it does not actively negotiate.

98. Based on the deceptive actions by JLL, Plaintiffs are entitled to recover actual, punitive, and treble damages in an amount to be proven at trial and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter a declaratory judgment declaring that the MOU and Amended MOU are not legally binding;

2. Enter a declaratory judgment declaring that JLL is not entitled to receive a contingency fee on any economic incentives it did not identify or negotiate;

3. Enter a declaratory judgment declaring that JLL is not entitled to receive a contingency fee on any economic incentives because such an arrangement violates South Carolina law;

4. Enter a declaratory judgment declaring the fair value of JLL's services in actively negotiating economic incentives on behalf of Plaintiffs;

5. Award Plaintiffs actual, punitive, and treble damages;

6. Award Plaintiffs their reasonable attorneys' fees and costs of this action; and

15

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

ELECTRONICALLY FILED - 2024 Apr 24 3:34 PM - COLLETON - COMMON PLEAS - CASE#2024CP1500302

7. Award such other and further relief in Plaintiffs' favor as the Court deems necessary or proper.

**SMITH ROBINSON, LLC**

*s/Jonathan M. Robinson*
Jonathan M. Robinson (SC Bar # 68285)
Frederick N. Hanna, Jr. (SC Bar # 104659)
2530 Devine Street, Third Floor
Columbia, SC 29205
803-254-5445

*Attorneys for Plaintiffs*

Columbia, South Carolina

April 24, 2024

16